Day, J.
 

 An examination of the record discloses that for the years 1927, 1928 and 1929 the average
 
 *563
 
 total expense of maintaining the agency at Georges-ville was $1,788.83, of which amount the agent’s salary formed almost the entire amount, to wit, $1,659.21. During those three years the total receipts for freight, passenger service, and miscellaneous revenues amounted to considerably less than the expenses; considering the normal business transacted during those three years, and excluding a special item hereinafter alluded to, the average annual loss to the railroad company for maintaining this agency station was over $600. However, during that three years, there was received as a part of the revenues for the year 1927 the sum of $4,143.90, being freight for stone shipped to Georgesville for a special road work then in process of construction. In the year 1928 the sum of $216.13 was received for freight on stone shipped for the same purpose on the same job. If these two items were to be included in the total receipts for the years 1927 and 1928, the total receipts for the three years would exceed the total expense, and the balance would be in favor of the railroad company. However, this item of freight on stone for the road job should not be considered a regular source of income to the railroad company, nor as a part of the receipts of the station which could be expected to repeat, but should be looked upon as purely a temporary item arising from the fact that Georgesville was a favorable point to which material for the construction of the road might be shipped. The job being completed, no further income from that source will accrue to the agency at Georgesville. What future public improvements may be is purely conjectural, although
 
 *564
 
 there is something in the record upon that subject.
 

 The agency at Galloway is on a macadam road usable throughout the year, at a distance from Georgesville of 4 miles by the highway and 3.5 miles by the railroad. The agency at Lilly Chapel is but 3.2 miles away, in the other direction. The prospects for future industrial development at Georgesville^ as shown by the record, do not seem to justify the hope of a return of freight and passenger business, and of general industrial activity, sufficient to show a favorable balance in financial returns for that station.
 

 The inconvenience to the public by being compelled to use the Galloway station, or the Lilly Chapel station, when necessary to transact business personally with an agent, is not so great that it may not be reasonably met by the public. Of course shipments to the Georgesville station may still be made.
 

 This situation is but the logical sequence from changed conditions and methods of transportation incident to the coming of the automobile and motor-truck. From an examination of the entire record, and having in view the provisions of Section 504-3, General Code, we feel that the facts justify the granting of the application of the railroad company as a reasonable request. To deny it is to require the railroad company to sustain a yearly loss out of proportion to the inconvenience the public may suffer by changing the station to a prepay or non-agency station. The principles of
 
 Cincinnati Northern Rd. Co.
 
 v.
 
 Public Utilities Commission,
 
 119 Ohio St., 568, 165 N. E., 38, 40, and the authorities therein cited, are applicable, and our conclusion is that the findings of the commission are unreasonable under
 
 *565
 
 the circumstances, “having due regard for the welfare of the public and the cost of operating the service,” and it therefore becomes our duty to reverse the same.
 

 Order reversed.
 

 Marsttat.t,, C. J., Jones, Matthias, Allen, Kinkade and Robinson, JJ., concur.