Weygandt^ C. J.
 

 Sections 504-2 and 504-3, General Code, read 4n part as follows:
 

 Section 504-2: “No railroad as defined in Section 501 of the General Code, operating any railroad in the state of Ohio, and no public utility as defined in Section 614-2» of the General Code furnishing service or facilities within the state of Ohio, shall abandon or be required to abandon or withdraw any main track or tracks or depot of a railroad or main pipe line, gas line, telegraph line or telephone toll line, electric light line, water line or steam pipe line, or any portion thereof, pumping station, generating plant, power station, or service station of a public utility, or the service rendered thereby, which has once been laid, constructed, opened and used for public business, nor shall be closed for traffic or service thereon, therein or thereover except as provided in Section 504-3.”
 

 Section 504-3: “Any such railroad or any political subdivision desiring to abandon, close, or have abandoned, withdrawn or closed for traffic or service all or any part of such main track or tracks, or depot, and any such public utility, or political subdivision desiring to abandon or close, or have abandoned, withdrawn or closed for traffic or service all or any part of such line or lines, pumping station, generating plant, power station or service station, shall first make application to
 
 *439
 
 the Public Utilities Commission in writing who shall thereupon cause reasonable notice thereof to be given, stating the time and place fixed by the commission for the hearing of said application. Upon the hearing of said application said commission shall ascertain the facts, and make its finding thereon, and if such facts satisfy the commission that the proposed abandonment, withdrawal or closing for traffic or service is reasonable, having due regard for the welfare of the public and the cost of operating the service or facility, they may allow the same; otherwise it shall be denied, or if the facts warrant, the application be granted in a modified form.”
 

 The sole question here presented is whether the effect of the ordinance passed by the Council of the city of Cincinnati is to require the gas company to “abandon or withdraw” its present
 
 service
 
 of mixed gas. If so, the order of the commission must .be affirmed. Otherwise, the order was erroneous and must be reversed.
 

 The gas company has been in existence since the year 1837, and during that period has operated under several franchises of varying terms. First it served artificial gas until the year 1905. From that time until 1925 the franchise provided for the supplying of natural gas. From that year until 1930 the franchise likewise provided for service of natural gas but permitted this to be supplemented with artificial gas. The next franchise provided for “natural gas or mixed gas (natural gas supplemented with artificial gas)” and also different rates for each kind. Subsequent franchises provided for mixed gas, and this arrangement prevailed until the passage of the present ordinance in 1939, the terms of which require the furnishing of only undiluted natural gas and hence prevent the further supplying of artificial or mixed gas.
 

 This mixed gas1 service consists of furnishing a mixture of four varieties: (1) Natural gas delivered by the Cincinnati Gras Transportation Company, (2) so-called
 
 *440
 
 stabilized natural gas obtained from tbe Ohio Fuel Gas Company, (3) gas manufactured by tbe Cincinnati Gas & Electric Company itself in its own plant in that city, and (4) coke oven gas manufactured at its plant located near Hamilton, Obio. If tbe company is required to operate under tbe present ordinance, three of tbe four varieties of gas now served will of course be discontinued. Would this amount to an “abandonment” or “withdrawal” of
 
 service
 
 within tbe contemplation of Sections 504-2 and 504-3, General Code? A careful study of tbe record clearly convinces this court that under tbe particular circumstances of this case tbe required change in tbe nature of tbe service is so substantial as to be tantamount to an abandonment and withdrawal.
 

 Tbe commission relies upon tbe decision of this court in tbe case of
 
 New York Central Rd. Co.
 
 v.
 
 Public Utilities Commission,
 
 123 Ohio St., 560, 176 N. E., 219, in which tbe abandonment and withdrawal of service consisted of tbe withdrawal of tbe railroad company’s agent from one of its stations which was thereafter maintained'as a non-agency or prepay station.
 

 On tbe other band tbe city places equal reliance upon tbe decision of this court in tbe case of
 
 Pittsburgh & West Virginia Ry. Co.
 
 v.
 
 Public Utilities Commission,
 
 120 Ohio St., 434, 166 N. E., 372. However, as observed in tbe opinion, there was no abandonment or withdrawal of service. A railway station was merely moved approximately 1000 feet to a location where greatly improved service was provided.
 

 Likewise this court finds itself unable to agree with tbe claim of tbe city that technically tbe present ordinance involves merely a restoration of service of natural gas as provided in tbe franchise in effect at tbe time tbe foregoing statutes were enacted. This theory erroneously presupposes tbe ineffectiveness of tbe numerous intervening franchises which neither tbe city
 
 *441
 
 nor the company then considered as within the purview of these statutes.
 

 The order of the commission holding the above-quoted statutes applicable to the present ordinance must be affirmed.
 

 Order affirmed.
 

 Day, Zimmerman, Williams, Matthias and Hart, JJ., concur.
 

 Turner, J., not participating.