By the Court.
 

 On September 10, 1934, the council of the city of Columbus, Ohio, passed Ordinance No. 349-34, “To regulate the price that may be charged for the natural gas in the city of Columbus during the period of five years from the twelfth day of November, 1934, and providing for the submission of this ordinance to a referendum vote at the election to be held November 6, 1934.”
 

 The rate fixed by the ordinance was forty-eight cents per thousand cubic feet, with a minimum monthly charge of seventy-five cents per customer. It was further provided that the natural gas furnished should
 
 *484
 
 possess a “heat value of not less than 900 British Thermal Units (gross) per cubic foot.”
 

 Such ordinance was submitted to a referendum vote of the electors of the city of Columbus on November 6, 1934, and was approved by a majority of those
 
 voting
 
 thereon.
 

 On November 9, 1934, The Columbus Gas & Fuel Company and The Federal Gas & Fuel Company, Ohio corporations engaged in the distribution and sale of natural gas and affected by the ordinance in question, filed their separate complaints in writing against the ordinance with the Public Utilities Commission of Ohio. Shortly thereafter, the companies named were duly merged with The Ohio Fuel Gas Company, which latter company appears herein as appellant.
 

 The Columbus Gas
 
 &
 
 Fuel Company at the time of its complaint to the commission elected to charge the former rate of fifty-five cents per thousand cubic feet of natural gas furnished, with a seventy-five cent minimum monthly charge, proceeding under Section 614-45, General Code, and giving bond. This procedure was approved by the commission, which assumed jurisdiction of the complaints and, after lengthy hearings, entered an order on August 18, 1939, finding the ordinance rate to be unreasonably low and fixing a rate as follows:
 

 “For the first 700 cubic feet, or less, or none, measured through any one meter, per month, 75 cents.
 

 “For all over 700 cubic feet measured through such meter, per month, 5 cents per one hundred cubic feet.”
 

 It was found that such rate would be the equivalent, in revenue, of an average rate of 56.22 cents per thousand cubic feet.
 

 Both The Ohio Fuel Gas Company and the city of Columbus appealed to this court from the order of the commission, the former claiming in general on the merits that the rate established was too low, and the latter that the rate as prescribed by the ordinance of
 
 *485
 
 September 10, 1934, was fair and reasonable and should have been upheld.
 

 In the course of the hearings before the commission, it developed that at times during the period covered by the ordinance, and before, the gas company engaged in the secret and undisclosed practice of mixing manufactured gases with the natural gas and furnishing the combined product, still possessing a heat value above 900 British thermal units per cubic foot, to the gas users of the city of Columbus. These manufactured gases were of two kinds — inert and so-called reformed —both of which were the products of the combustion of natural gas. Such practice is referred to by the company as “stabilization” and vigorously defended, while the city calls it “dilution” and strongly condemns it.
 

 After all the evidence had been submitted in the hearings before the commission, the city moved a dismissal of the company’s appeal for lack of jurisdiction on the grounds that the gas furnished was not natural gas as specified in the ordinance; that the commission lacked power to authorize the company to furnish the character of gas actually delivered; and that the evidence did not show the cost of furnishing consumers the kind of gas required by the ordinance.
 

 This motion was overruled by a divided vote of the commission, and the majority proceeded to fix the rate as already mentioned, over the strenuous objection of the chairman.
 

 It is urged by the city in its assignments of errors in this court that the commission committed error in overruling its motion to dismiss the appeal. If this contention were sustained, the result would be to make the ordinance controlling.
 

 The position taken is that the ordinance imposed the duty on the company to furnish and deliver natural gas only, and that it had no right to deliver natural gas mixed with inert or reformed manufactured gas, with
 
 *486
 
 out first obtaining permission to do so as provided in Sections 504-2 and 504-3, General Code, and that, having failed to secure such permission, the commission had no jurisdiction to determine rates, pure natural gas not having been supplied. In support of the argument the city relies upon the pronouncement of this court in the case of
 
 City of Cincinnati
 
 v.
 
 Public Utilities Commission,
 
 137 Ohio St., 437, 30 N. E. (2d), 797.
 

 Certain members of this court found themselves in accord with the city’s contention, while others were of the view that the mixing of the inert or reformed gas with the natural gas did not constitute a change in service sufficiently drastic to oust the commission of jurisdiction, and prevent it from determining the important matters in controversy. To hold in accord with the city’s contention would mean that the jurisdiction of the commission to entertain an appeal under Sections 614-44 to 614-46, General Code, inclusive, could be ousted by the wrongful act of a utility, even though the appeal was being prosecuted by one per cent of the electors of a municipal corporation, as permitted by Section 614-44, General Code, from air exorbitant rate allowed such utility by the city council of such municipal corporation.
 

 This divergence in viewpoint has been responsible in a measure for the delay in deciding the case. In order to reach a common ground and dispose of the matter, those members of the court favorable to the city’s contention have deferred to their associates holding a contrary view.
 

 Ordinance No. 349-34 of the city of Columbus specified “natural gas” of a heat value above a prescribed minimum. In the case of
 
 Circleville Light & Power. Co.
 
 v.
 
 Buckeye Gas Co.,
 
 69 Ohio St., 259, 270, 69 N. E., 436, 439, it was said that “manufactured gas * * * is a substance produced by human skill and art. Natural gas comes from the great laboratory of nature.”
 

 It is obvious that the gas furnished by the company
 
 *487
 
 was not unadulterated natural gas, but a combination of natural gas and .manufactured gas, not within the contemplation of the city of Columbus or the Columbus gas consumers. Furthermore, this hybrid product was created and distributed surreptitiously, without the knowledge or approval of the city, the users of the gas, or the Public Utilities Commission. Natural gas was called for and, under the circumstances, natural gas should have been supplied — not mixed gas. The company is solely responsible for its action and in our estimation is not entitled to the benefit of any expense incurred in obtaining these manufactured gases. All expenses so incurred should be wholly eliminated in the determination of a rate base.
 

 In our opinion the most practical manner in which to handle the problem is to reverse the order of the Public Utilities Commission and remand the case, with instructions to fix a rate for the period in dispute on the basis of the natural gas supplied by the company, eliminating entirely from the computation any and all expenses of the company connected with the procurement and distribution of the manufactured inert and reformed gas. This may be done upon the existing record, with additional evidence if necessary.
 

 We have examined and considered all other errors alleged by both complaining parties, and do not find the order of the commission unreasonable or unlawful except in the one particular discussed.
 

 The order of the Public Utilities Commission is reversed and the case remanded for further proceedings as indicated herein.
 

 Order reversed.
 

 Weygandt,- C. J., Williams, Hakt, Zimmerman and Bettman, JJ., concur.
 

 Turner and Matthias, JJ., not participating.