By the Court.
 

 The findings, opinions and order of the Public Utilities Commission of Ohio made August 18, 1939, show that for the year ending December 31, 1937, expenses connected with the procurement and distribution of the manufactured inert and reformed
 
 *584
 
 gas were claimed and allowed in the sum of $110,908.42, and that during, this same period the company used natural gas in the production of these inert and reformed gases costing $168,631.55, which had also been allowed as an expense. The allowance of these items formed in part the basis for the reversal of the finding and order of the commission, and it is conceded by both the Public Utilities Commission and the appellant that these expenses should be eliminated and that no error results by reason of the decision of the commission striking them from the allowable expenses.
 

 Only two matters, therefore, are in issue in this appeal: -(1) The commission’s elimination of forty per cent of the total gas rate case expense previously allowed by the court, that being the proportion of such expense now attributed by the commission to the procurement of evidence, the preparation of exhibits and submission of evidence relating to the inert and reformed gas; and (2) the commission’s use of a percentage method in arriving at the 53-cent rate, as subsequently set forth herein.
 

 Considering the first of these matters, that is, the elimination of a portion of the gas rate case expense, we are immediately confronted by an admission of the commission that its finding of the percentage of expense to be disallowed was not based upon any evidence in the record previously presented, and that the commission received no additional testimony and afforded no opportunity to present evidence bearing upon the question. This fact in itself would require a reversal of the finding and order of the commission. But there is a further and more cogent reason for reversal.
 

 The gas company contended throughout the entire controversy that the use of these inert and reformed gases was necessary in order to provide adequate and satisfactory service to the consumer. The city’s posi
 
 *585
 
 tion is, and the evidence tended to show, that the use of these gases served no such purpose. The company contended that stabilized gas is natural gas and that it had fully complied with the terms of the ordinance. Such contention is not supported by the record or upheld by any decision of this court. Mixed gas may properly be furnished to a city where permissible under the terms of an ordinance of the city.
 
 City of Cincinnati
 
 v.
 
 Public Utilities Commission,
 
 137 Ohio St., 437, 30 N. E. (2d), 797. However, such issues were a proper subject of controversy and litigation, and there is nothing in the record to show improvident or unjustifiable cost or expense of litigation occasioned by the appellant. The Public Utilities Commission therefore erred in striking the forty per cent from the gas rate case expense previously found and allowed by the commission.
 

 The last, and probably the appellant’s most important claim of error on the part of the commission, refers to the methods by which the Public Utilities Commission arrived at the 53-cent rate. The procedure of the commission in this respect goes far beyond the instructions of the court in its previous opinion and mandate issued in áecordance therewith; but we shall review and determine the validity of its action in that regard.
 

 The record in this case contains evidence of the expenses incurred by the company for the years 1935, 1936 and 1937, and the average for these years was used in the original decision as the basis on which the commission found the rate of 56.22 cents per thousand cubic feet inside the city of Columbus. In computing this rate the commission originally allowed the company the actual cost of the natural gas which it purchased for resale. This computation was based on the evidence in the case, and the commission had not
 
 *586
 
 allowed the company any amount for any gas purchased and used only for so-called stabilization purpose, that being the inert gas purchased from the Preston Oil Company.
 

 When the case was remanded, the commission substituted for the actual cost of gas as theretofore found the estimated cost if the company had purchased and supplied natural gas alone, which estimated cost, of course, was somewhat higher than the cost of natural gas actually purchased by the company and previously allowed by the commission as an expense. After making minor corrections for taxes and allowing all the expenses in the exact sums which were previously allowed (excepting, of course, those heretofore mentioned which were stricken out because they concededly concerned stabilization), the commission arrived at a
 
 new
 
 cost based upon the furnishing of natural gas alone, and fixed that cost at 56.68 cents per thousand cubic feet. This figure the commission designated the “necessary cost per M c. f. for natural gas inside the city of Columbus.”
 

 The commission further determined that only 93.516 per cent of the gas furnished to the city of Columbus was natural gas and, consequently, that the necessary cost of the natural gas actually furnished in each thousand cubic feet of combined natural and manufactured or inert gas was 93.516 per cent of 56.68 cents per thousand cubic feet, or 53 cents.
 

 The following is a table in which the findings of the commission in its order of August 1939, and its order of October 1941, are compared:
 

 
 *587
 
 The Ohio Fuel Gas Company Successor to The Columbus Gas & Fuel Company
 

 and
 

 The Federal Gas & Fuel Company Average Rate per M c. f. for Inside City of Columbus for Years 1935, 1936 and 1937 Based on Combined Cost of Service, Including Rate Case Expense.
 

 Aug. 18,1939 Amount Allowed on Original Hearing
 

 Oct. 23,1941 Amount Allowed on Rehearing
 

 Three Year Average
 

 Natural Gas Purchased for Resale...........$2,413,155.56 $2,474,370.45
 

 Distribution System Expense ............... 219,586.25 219,586.25
 

 Utilization System Expense ............... 30,600.53 30,600.53
 

 Commercial Expense ... 126,130.97 126,130.97
 

 Business Promotion Expense ............... 60,472.90 60,472.90
 

 General Administrative Expense ............ 25,880.60 25,880.60
 

 Other General Expense. 52,634.21 52,634.21
 

 Taxes (exclusive of State Excise, P.U.C.O. and Fed. Income)......... 74,960.44 74,960.44
 

 Federal Income Tax. ... 49.325.00 49,325.00
 

 Public Utilities Commission Tax............ 771.00 749.69
 

 State Excise Tax....... 36.776.00 35,761.78
 

 Total Expenses... .$3,090,293.46 $3,150,472.82
 

 
 *588
 
 Depreciation Reserve Allowance ............. 79,557.92 79,557.92
 

 Allowance for Return at 6.5% .....'.......... 357,621.04 357,621.04
 

 Rate Case Expense (60% only allowed in 1941). 78,400.00 47,040.00
 

 Total Cost of Service .........$3,605,872.42 $3,634,691.78
 

 Credits to Total Cost of Service .............. 17,772.49* 17,772.49*
 

 Net Cost of Service $3,588,099.93 Deduction, $3,616,919.29
 

 due to Penalties ..$37,509.57 And Est. Extra Revenue Due to Minimum Bills.. $33,390.17 _
 
 r
 
 70,899.74* 70,899.74
 
 *
 

 Necessary Revenue from Sale of Natural Gas.. $3,517,200.19 $3,546,019.55
 

 Total M c. f. Sales...... 6,255,993.26 6,255,993.26
 

 Necessary cost per M c. f. inside City of Columbus
 
 [1]
 
 ................ 56.220
 

 Necessary cost per M c. f. for Natural Gas inside City of Columbus
 
 [2]
 
 .... 56.680
 

 Cost of Natural Gas in each M c. f. of Gas Supplied Inside City of Columbus (93.516% of 56.680)2 .......... 53.000
 

 
 *589
 
 An examination of this table will show that in every instance except the changes which were made by the commission when it substituted a new cost value for natural gas which would have been purchased had only natural gas been served, the figures are identical (excepting, also, a minor adjustment for taxes and rate case expense). Therefore, it clearly appears that with minor exceptions the expenses originally found and allowed by the commission and the valuation of the property used and useful so found by the commission and approved by this court have been again found and fixed by the commission at the same figure. The number of thousand cubic feet sold has remained unchanged and the rates in each instance are fixed on the basis of 6,255,993.26 thousand cubic feet of gas sold. Although the opinion of the Public Utilities Commission, after making the percentage reduction heretofore noted, omits showing the total income of the company at the proposed 53-cent rate, the amount the company would receive is but a matter of arithmetic. As first found by the commission, the company was to receive $3,517,200.19 for the gas delivered in such quantity. As now found by the commission with its computation of a 53-cent rate, the company would receive $3,315,-676.43. This, upon the basis of the data in the table herewith, would result in a reduction annually of $201,523.76.
 

 The net result is clear, that is, that by reason of this percentage method of computation the gas company would suffer a substantial reduction in its annual income, for, as is contended by the company in its briefs, a reduction of approximately seven per cent of every item of expense heretofore allowed is effected. Looking at it another way, and conceding that the expenses computed by the commission in this case upon two occasions can no longer be contested, the adoption of the proposed gas rate of 53 cents would constitute an arbitrary reduction of the rate of return upon the
 
 *590
 
 property used and useful as previously found and allowed. That is, instead of being allowed to earn 6% per cent or $357,621.04, as was twice found by the commission itself, the company could earn only $188,-965.39, or 3.43 per cent. This latter figmre results from the computation by the company and follows a deduction of the disallowed expenses by reason of stabilization and difference in amount of tax payments required.
 

 The ultimate question to be determined in every utility rate case is the rate to be fixed which will afford a fair and reasonable return upon the company’s investment. Compliance with the former mandate of this court required only the finding of the expense covering the so-called stabilization process and the deduction thereof from the total expenses allowed, and computation of the rate upon the basis thus ascertained. The further action taken by the commission was not only unauthorized, but the percentage method it adopted and applied, as above indicated, would establish a confiscatory rate. The order of the Public Utilities Commission is therefore reversed and the case remanded with instructions to disallow the expenses incident to the actual stabilization of the gas, to restore to its original figure the allowance for gas rate case expense, and to compute a rate in the long approved and well established method on the basis of the
 
 actual purchases
 
 of natural gas which was served to the city of Columbus, as determined by the commission in its finding and order of August 18, 1939.
 

 Order reversed and cause remanded.
 

 Weygandt, C. J., Williams, Matthias, Hart and Zimmerman, JJ., concur.
 

 Turner and Bettman, JJ., not participating.
 

 *
 

 Denotes deduction.
 

 [1]
 

 Appears only in 1939 order.
 

 [2]
 

 Appears only in 1941 order.