*513
 
 Taft, J.
 

 The first question to be considered is whether the action, which it is alleged that Western Union proposes to take with regard to its service in these communities, can be taken without first securing the approval of the commission. The answer to this question depends upon an analysis of the allegations of the pleadings and the terms of Sections 504-2 and 504-3, General Code.
 

 So far as material to a consideration of the questions involved in this case, those sections read as follows :
 

 “Section 504-2.
 
 * * * no public utility
 
 * * * furnishing service or facilities within the state of Ohio,
 
 shall abandon
 
 or be required to abandon or withdraw
 
 any * *
 
 *
 
 telegraph line
 
 * * *
 
 or any portion thereof
 
 * * * or service station of a public utility,
 
 or the service rendered thereby,
 
 which has once been laid, constructed, opened and used for public business, nor shall
 
 [sic]
 
 be closed for traffic or service thereon, therein or there-over
 
 except as provided in Section 504-3,
 
 General Code. Any * * # public
 
 ■utility violating
 
 the provisions of this section shall
 
 forfeit
 
 and pay into the state treasury not less than one hundred ($100) dollars, nor more than one thousand ($1,000) dollars,
 
 and
 
 shall be
 
 subject to
 
 all other
 
 legal and equitable remedies for
 
 the
 
 enforcement
 
 of the provisions of this act [Sections 504-2 to 504-3, General Code].
 

 “Section 504-3. * * * any such public
 
 utility * *
 
 *
 
 desiring to abandon or close,
 
 or have abandoned, withdrawn or closed
 
 for
 
 traffic or
 
 service all or any part of such line or lines
 
 * * *
 
 or service station, shall first make application to the
 
 Public Utilities
 
 Commission
 
 in writing * * *.
 

 “Upon the hearing of said application said commission shall ascertain the facts, and make its finding thereon, and
 
 if
 
 such
 
 facts satisfy
 
 the
 
 commission that
 
 the proposed abandonment,
 
 withdrawal or closing for
 
 
 *514
 
 traffic or
 
 service
 
 is reasonable * *
 
 *'
 
 they may allow same * * *. Provided, however, that should the application ask for the
 
 abandonment or withdrawal of
 
 any * * *
 
 telegraph line *
 
 * * service station,
 
 or
 
 the
 
 service rendered thereby,
 
 in such manner as can result in the permanent
 
 abandonment
 
 * * *
 
 of service and facilities
 
 of any such public utility, no application shall be granted unless the company or public utility shall have operated said * * * telegraph line * * * or service station for * * # at least five years, and such notice shall be given by publication in a newspaper of general circulation throughout any county or municipality which may have granted a franchise to said company or public utility, under which said * * * telegraph line * * * or service station is operated or in which the same is located * * *.
 

 “The provisions of this section shall apply to all such service now rendered and facilities furnished or hereafter built and operated * * (Emphasis ours.)
 

 The petition contains allegations that Western Union proposes “to discontinue, abandon and substitute all its class 1-B telegraph offices” in certain communities and to “substitute service therein by local telephone companies under the management of The Telephone Service Company of Ohio.”
 

 Throughout the petition, this proposed action of Western Union is referred to as a
 
 “discontinuance, abandonment or
 
 substitution” of service.
 

 The petition alleges that Western Union “had made no application for the discontinuance, abandonment, or substitution of service” to the commission; that the commission, “upon its own motion, issued an order * * * requiring * * * Western Union * * * to show cause why an application for discontinuance, abandonment or substitution should not be filed with the * * * commission as required by Sections 504-2 and 504-3, General Code”; that Western Union appeared “for the
 
 *515
 
 purpose of denying jurisdiction of the state of Ohio and the Public Utilities Commission of Ohio over proposed discontinuance, abandonment or substitution of * * * service”; that, on June 17, 1947, the commission made an order finding “that the proposed discontinuance, abandonment or substitution of its class 1-B telegraph offices in each of the communities involved and substitution of the teleprinter to be established and operated by the local telephone company is abandonment, substitution
 
 or change
 
 in service as contemplated by Sections 504-2 and 504-3 of the General Code,” and directed "Western "Union to file an application with and receive approval of the commission “prior to making the contemplated or proposed abandonment or change in service”; that Western Union had entered into contracts with the Telephone Service Company under which it “will discontinue operations of its offices and agencies” in the communities involved ‘
 
 ‘
 
 and * * * the Telephone Service Company will handle all telegraph business from and to such cities ’ ’; and that, without obeying and complying with the order of the commission of June 17, 1947, Western Union will “proceed to abandon, discontinue
 
 or substituíe
 
 intrastate utility service in” the communities involved. (Emphasis in quoted portion added.)
 

 An examination of the order of the commission, dated June 17, 1947, which is an exhibit to the petition, discloses that it is substantially as described in the petition and contains a finding “that the proposed discontinuance of its class 1-B telegraph offices” in the communities involved “and the substitution of teleprinter operated agency offices to be established at each place * * * is abandonment, substitution
 
 or
 
 change in service as contemplated in Sections 504-2 and 504-3 of the General Code of Ohio.”
 

 An examination of the contract made between Western Union and The Telephone Service Company
 
 *516
 
 of Ohio, a copy of which is attached to the petition and made a part thereof, does indicate that certain telegraph offices, theretofore operated by Western Union in the communities involved, are to be closed but it also indicates clearly that the service furnished by those offices is to be rendered by other facilities. If the petition had alleged definitely that the action to be taken by Western Union under these contracts would amount to an abandonment of service, we would have a different question
 
 from that
 
 presented by this record. However, the petition merely alleges that such action will constitute abandonment or
 
 substitution
 
 of such service.
 

 An analysis of the petition clearly discloses that the proposed action of Western Union, about which the state complains, is not alleged to constitute merely the abandonment, closing or withdrawál of a telegraph line or any portion thereof, or a service station of a public utility, or the service rendered thereby. On the contrary, such proposed action is consistently described in the petition as an abandonment, discontinuance “or” substitution of service. It would seem obvious that an allegation that certain action will constitute an abandonment
 
 or
 
 a substitution of service is not an allegation that such action will constitute an abandonment of service. Such allegations could be sustained by proof that such action will constitute a substitution. If the words used had been “abandonment
 
 and
 
 substitution,” then an abandonment would have been alleged.
 

 It is obvious that, where a petition alleges in the alternative two statements of fact, one of which is sufficient to constitute a cause of action and the other is not, a cause of action is not stated. 41 American Jurisprudence, 317, Section 41.
 

 We find nothing in Sections 504-2 or 504-3, General .Code, relating to substitution. Obviously, a substitu
 
 *517
 
 tion may involve an abandonment within the meaning of those sections.
 
 New York Central Rd. Co.
 
 v.
 
 Public Utilities Commission,
 
 123 Ohio St., 560, 176 N. E., 219;
 
 City of Cincinnati
 
 v.
 
 Public Utilities Commission,
 
 137 Ohio St., 437, 30 N. E. (2d), 797. On the other hand, it may not involve such an abandonment. For example, this court has pointed out that a substitution may result in an improvement of the service rendered, and that such a substitution, even though technically it involves abandonment of old facilities, would not amount to an abandonment within the meaning of Sections 504-2 and 504-3, General Code.
 
 Pittsburgh & West Virginia Ry. Co.
 
 v.
 
 Public Utilities Commission,
 
 120 Ohio St., 434, 166 N. E., 372. It would be absurd to contend that, if, because of technological advances in science, a telegraph company desired to replace its telegraph line with a better line, such replacement would involve an abandonment within the meaning of those sections; or that the change in location of a telegraph office in a particular community, so as to enable the telegraph company to render better service than it had at the previous location, would involve such an abandonment. While the services previously performed by Western Union at its own offices are here to be replaced by services performed by the Telephone Service Company, it does not follow that Western Union is abandoning the rendering of service. In the past, Western Union has had to employ individuals to furnish the services for which it will now contract. The mere fact, that it contracts with another for performance of services, instead of employing others to perform them, does not indicate that it has abandoned the rendering of those services.
 
 Railway Co.
 
 v.
 
 Schneider,
 
 45 Ohio St., 678, 695, 696, 17 N. E., 321.
 

 In effect, the petition alleges that Western Union is proposing to do something which may or may not
 
 *518
 
 require Western Union to secure approval from the commission. Certainly such a petition does not allege proposed action which will require commission approval. We have grave doubt, therefore, as to whether the petition states a cause of action. If we resolve that doubt in favor of the pleader (See Section 11345, General Code), then we must likewise resolve in favor of Western Union any doubts we may have with respect to allegations of the answer that are admitted by the reply. This leads inevitably to the conclusion that the proposed substitution is not an abandonment within the meaning of Sections 504-2 and 504-3, General Code.
 

 In its answer, the defendant alleges that it did apply to the Federal Communications Commission “for the discontinuance” of some of its services but states:
 

 “4. In said application defendant proposed to continue to render its services in the transmission of messages and services incidental thereto in interstate and intrastate commerce, such services to be provided through teleprinter agency offices operated by local telephone companies, each under the management of The Telephone Service Company of Ohio, all as particularly described in said application and in the ‘Report of the Commission.’ ”
 

 Both that application and that report were made a part of the answer. These allegations are admitted by the reply to be true. A reading of that application and of that report clearly discloses that the substituted service, to be provided by Western Union, will result in improving the service now being rendered.
 

 It is argued that the commission is better fitted than a court to determine whether certain. proposed action of a public utility will constitute an abandonment of service. However, Section 504-2, General Code, provides that a public utility violating its pro
 
 *519
 
 visions shall forfeit and pay to the state not less than $100 nor more than $1,000; and provides that such utility “shall be subject to all other legal and equitable remedies for the enforcement” of that and the succeeding section. There are no provisions of law investing in the commission any jurisdiction with respect to the imposition of such forfeiture or any jurisdiction with respect to the enforcement of the provisions of those two sections. The commission is given no jurisdiction to make any order under those sections, except where an application to the commission has been made by one of the parties described therein. No such application was made in the instant case. In order to assess the forfeiture provided for or to take advantage of auy legal or equitable remedies for the enforcement of the provisions of these sections, it would, therefore, be necessary for the state to seek court action. In order to determine whether the forfeiture should be assessed or any remedy for enforcement given, a court would necessarily be required to find whether there had been an abandonment or withdrawal of service.
 

 The state argues that the judgments of the lower courts, in effect, represent an overruling or reversing of an order of the commission, which is forbidden by Section 549, General Code. That section reads:
 

 “No court other than the Supreme Court shall have power to review, suspend or delay any order made by the commission, or enjoin, restrain or interfere with the commission or any member thereof in the performance of official duties. Nor shall the writ of mandamus be issued against the commission or any member thereof by any court other than the Supreme Court.”
 

 The obvious answer to this contention is that the commission had no jurisdiction to make the order of June 17, 1947. That order was, therefore, void, a
 
 *520
 
 nullity and subject to collateral attack. The trial court properly ignored it.
 

 Sections 504-2 and 504-3, General Code, do require a utility to apply for and secure permission from the commission before it does certain acts. However, no statutory provisions give the commission any authority to order a utility to make such application.
 

 If the utility, without having secured permission from the commission, does acts, for the doing of which those sections of the Code require commission approval, court action may be taken to assess a penalty against the utility. If the utility is threatening to do such acts without commission approval, court proceedings may be commenced to enjoin the utility from thus violating the law. If the commission induces the state to choose this latter means, as it apparently did in the-instant case, the state has, like any other plaintiff, the burden of establishing affirmatively that the action which the utility is threatening to take is action which can only be taken with commission approval. Then the court must decide that question.
 

 One of the grounds stated by the Common Pleas Court, in support of its judgment, was that the power and authority of the Federal Communications Commission superseded that of the Public Utilities Commission of Ohio. This involved a constitutional question. It is not necessary to consider that constitutional question in determining whether the judgment of the Common Pleas Court was correct. As recently pointed out by this court, constitutional questions will not be decided until the necessity for their decision arises.
 
 State, ex rel. Lieux,
 
 v.
 
 Westlake,
 
 ante, 412.
 

 Judgment affirmed.
 

 Zimmerman, Stewart, Middleton, Matthias and Hart, JJ., concur.