PENNSYLVANIA RAILROAD, Investigation, In re.

Public Utilities Commission.

No. 28822.   Decided December 10, 1959.

*Messrs. Donald E. Erskine* and *G. W. Reid,* for the Complainants.

*Mr. Fred Klause,* assistant director of law, for the City of Cleveland, Protestant.

*Mr. William A. Richards,* for the Brotherhoods of Railway

Clerks, Cooperative Legislative Committee of the Transportation Brotherhoods, Brotherhood of Locomotive Engineers, Brotherhood of Locomotive Firemen and Enginemen, Brotherhood of Railroad Trainmen, Order of Railway Conductors, and Brotherhood of Maintenance of Way Employees, Protestants.

*Mr. Donald A. Brinkworth,* for the Pennsylvania Railroad Company, Respondent.

### ATTORNEY EXAMINER'S REPORT
SUMMARY OF THE EVIDENCE:

*Witness Donald E. Erskine,* 7605 Deerpath, Hudson, Ohio, appeared and testified as a complainant against the Pennsylvania Railroad Company. The witness stated that he was employed by the Glidden Company and was a regular commuter on trains 353 and 354 between Cleveland and Hudson.

The witness stated that he opposed the proposal of the Pennsylvania Railroad to discontinue trains 353 and 354 on two bases, namely: (1) The fact that the through train would be completely unsatisfactory for use as a commuter train and (2) that presently he had two trains which he could depend upon for service into Cleveland and withdrawal of one of these trains would be inconvenient to him.

The witness stated that he had been using trains 353 and 354 for approximately two and one-half years on an average of five days a week.

Upon cross-examination the witness stated that he presently takes a Cleveland public bus from the 55th Station of the respondent to his company's office in downtown Cleveland—a distance of about 3 to 4 miles, or 10 minutes driving time.

The witness stated that if Train 39 operated on time that it would enable him to get to his place of employment by 8:15.

The witness stated that since he has been using trains 353

and 354, their on-time performance had been very good. The witness stated that he had never used the Erie Railroad service into Cleveland nor had he ever driven to the end of the Shaker Rapid Transit, which was 22 miles from his home, to use that service into Cleveland.

*Witness Tryon H. Ferguson* appeared on behalf of the Complainants. The witness stated that he was employed by the Tru-Temper Corporation in Cleveland, Ohio and was a regular passenger on the involved commuter trains.

The witness stated that he has been using this commuter service for 13 years; that he used commuter trains in preference to Train No. 39 because the former got him into Cleveland in time to go to work whereas the latter always arrived in Cleveland after the beginning of his work day.

The witness stated that "the proposed schedule would meet my requirements if it is maintained." (R. P. 28.)

Upon cross-examination the witness stated that he walks to the station at Hudson where he boards the respondent's train.

*Witness George Ollos* appeared and testified on behalf of the complainants. The witness stated that he was employed by Warner & Swazey Company at Cleveland, Ohio and that he had been a regular passenger on the involved commuter trains for over thirteen years.

The witness stated that, in his opinion, the "through trains are not reliable" and that this was the basis of his protest. The witness stated that, in his opinion, the lack of patronage on this train was due to the failure of the respondent to advertise the availability of this service.

Upon cross-examination the witness stated that an earlier arrival of the commuter train of the respondent "would probably be the answer to most of us that are protesting today, providing that you give us some assurance that the schedule would be consistent." (R. P. 33.)

*Witness Maxwell Riddle* appeared and testified on behalf of the complainants. The witness stated that he was a reporter on the Cleveland Press and that he used the commuter train regularly for more than 20 years. The witness stated that he had used both the commuter trains and the through trains and that, in his opinion, "you can not depend upon Train 39 to get

you to Cleveland on time." (R. P. 35.) The witness stated that he kept a record during the summer of 1959 of the promptness of Train 39 and recited a list of dates when this train was late.

The witness stated that one of the reasons for the lack of patronage on these two trains was the poor equipment furnished by the respondent for this purpose which discouraged the attraction of commuters.

Upon cross-examination the witness stated that he used both the early commuter train and Train 39 in getting to work in the morning and that he usually took the evening commuter train home. The witness stated that he could make it to his place of employment by using the Cleveland Transit bus at the Euclid 55th St. in about 15 to 20 minutes, depending upon when you catch the bus.

*Witness Valeria Silvasi* appeared and testified on behalf of the complainant. The witness stated that she had used the involved commuter trains for over sixteen years and that she was familiar in general with the proposed substitute service. The witness stated that she helped circulate a questionnaire among other commuters and that she filled out a copy of the questionnaire herself.

The witness stated the first question was: "Have you had occasion to use this service of the P. R. R. Dan Hanna Special during the past twelve months?" The witness answered this question "Yes."

The second qquestion was: "What, if any, is your reaction to the equipment and other conditions provided by the P. R. R.?" The witness stated that she answered this question by stating that the equipment was "fair."

The witness also stated that the equipment was dirty, that it was cold in the winter, and it was warm in the summer. "Under other remarks I said, 'the cleanliness of the equipment has improved a little recently. Air conditioning does not cool the equipment properly.'" (R. P. 53.)

Question number three was: "What means of advertising or other method have you observed in use by the P. R. R. to promote this service?" The witness answererd "I haven't seen any."

The witness stated that the fourth question was: "Do you know of neighbors or others who would ride this train if better services were provided?" The answer was "Yes."

The witness stated that the fifth question was: "Will the P. R. R. train No. 39, scheduled to arrive in the East 55th St. Depot at 8:00 A. M. be of service to you?" The witness answered this question by stating "No."

The witness stated that the sixth question was: "List the names and office address of your Mayor." The witness answered by stating "I listed Honorable David Green, Ravenna City Hall, Ravenna, Ohio."

The witness stated that the seventh question to this questionaire was: "List date and time the City Council or other governing body of your community meets." The witness replied to this question by stating "First Monday of each month at 7:00 P. M."

The witness stated that there was an eighth question on the questionnaire which stated: "Will you be willing to attend one of these meetings and/or conferences with the Mayor to solicit help to continue the operation of this service." The witness complied with this question by stating "Yes."

The witness stated that the ninth question stated: "Will you be willing to write a letter of protest to the Chairman of the Public Utilities Commission, State Office Building, Columbus, Ohio, and to appear as a witness before the Commission to testify in regard to inconvenience to you if this service is discontinued? Will you write letters?" The witness complied with this question by stating "Yes."

The witness also stated that the tenth question was: "Are you employed by the P. R. R.?" Her answer was "No."

The questionnaire which the witness was referring to was identified and marked as Complainant's Exhibit No. 1.

*Witness John H. Sudimak* appeared and testified on behalf of the Complainants. The witness resided at Bedford, Ohio, and uses trains 353 and 354. The witness stated that his working hours were from 8 to 5 and that he did not feel that Trains 38 and 39 would serve his commuting purposes.

The witness stated that he knew of no action on behalf of the respondent to promote more passenger travel service

on the involved commuter trains. The witness stated that because of the traffic problem involved in driving he would not use an automobile in commuting to Cleveland.

*Witness N. S. Rockafellow* appeared and testified on behalf of the Complainants. The witness resides at Ravenna and uses the involved commuter trains. The witness works for the Cleveland Liner & Manufacturing Company at Cleveland, Ohio. The witness stated that, in his opinion, the "Proposed trains would make me late for work ever day." (R. P. 72.) The witness stated that the respondent's proposal to operate a through train on an early schedule would meet his commuting needs if the train operated on time.

*Witness Warren Wickes* appeared and testified on behalf of the complainants. The witness stated that he lived at Hudson, Ohio and was employed by the Cleveland Electric Illuminating Company at Cleveland, Ohio. The witness stated that he has used the involved commuting train regularly for past twelve years. The witness felt that the proposed substitution would not get him to his place of employment on time.

Upon cross-examination the witness stated that he had never used the services of the Erie Railroad at Aurora for commuting into Cleveland. This station is approximately eight miles from his home.

*Witness Paul V. Tanner* testified on behalf of the complainants. The witness stated that he worked for the United States General Accounting Office at Cleveland, Ohio and was a regular commuter on the involved train. The witness stated that it was necessary that he be at work by 8:00 o'clock and that the proposed rescheduling of the involved through trains would not meet his commuting requirements. The witness resides at Hudson, Ohio.

The witness stated upon cross-examination that a rescheduling of the through trains to arrive from 7 to 10 minutes earlier would not meet his needs.

*Witness Madalyn G. King* appeared and testified on behalf of the complainants. The witness stated that she resided in Bedford and worked in Cleveland, Ohio. She stated that if the proposed train got into the 55th St. Station at 8 o'clock she would only have 15 minutes to get to her place of employment.

The witness stated that the train would have to have an arrival time of 7:45 A. M. in order for her to meet her working schedule. The witness stated that there was also bus service between Bedford and Cleveland which she used occasionally.

*Witness John M. Baldwin, Jr.*, appeared and testified on behalf of the respondent, the Pennsylvania Railroad Company. The witness stated that he was a passenger trainmaster employed by the Pennsylvania Railroad and that passenger trains 353 and 354 were operated under his jurisdiction. These trains are operated daily except Saturday, Sunday and holidays between Alliance and Cleveland, Ohio. The crew of these trains consists of one engineer, one fireman, one conductor and one flagman. The trains consist of one diesel electric engine and two "scheme type six coaches." The witness identified and testified upon Respondent's Exhibit B which is a photograph of a diesel electric locomotive similar to the one operated by the respondent over the involved route.

The witness identified and testified from Respondent's Exhibit C which is a photograph of a "scheme type six coach" which is a coach similar to those used in the commuter service. The witness also similarly identified and testified from Respondent's Exhibit D, which is a photograph of a "scheme six type coach." The witness also testified from Exhibit E, which is a photograph of the interior of the scheme six type coach used in this service. This coach seats 85 passengers.

Trains 38 and 39 operate with two diesel electric locomotives, one express car, one baggage car, two P-85 type coaches, one dining car, and three sleeping cars. The Pennsylvania Railroad proposes to include in the consist of Trains 38 and 39 one scheme six type coach, which will be the first passenger-carrying car on the train, "to take care of commuter traffic between Ravenna and Cleveland." (R. P. 267.) This scheme six type coach will be retained as long as the volume of passenger service warrants its retention. This coach will ordinarily be the second or third car back in the train, the preceding cars being baggage and express cars.

At the 55th St. Station the first passenger car will be so positioned that commuter passengers will be immediately able to leave the station and proceed to their Cleveland destinations.

Since October 26, 1959, Trains 38 and 39 have been making all the local stops between Cleveland and Ravenna made by the Dan Hanna commuter train.

Since October 26, 1959, Train 39 has been on time with the exception of the following dates: November 13, 24, 25 and 27.

Train 38 operated on schedule every day since October 26 with the exception of one occasion when Train 354 was stalled in front of Train No. 38.

With respect to the delayed performances of Train No. 39, the witness stated that on November 13, the train was detained 18 minutes at New Castle Junction "due to a bursted steam hose and another hour and 10 minutes at Youngstown disposing of this car and after the train was coupled there was considerable trouble experienced coupling steam hoses and getting steam to the train. The train on that day arrived at Cleveland one hour and eight minutes late." (R. P. 271.)

The witness stated that "effective on November 24 we were starting to move some deadhead New York Central cars on the rear-end of the train to be cut off at Center Street at Youngstown at which point they would be placed on a New York Central interchange. We tried this practice for several days and found that the train was being detained by this move and it was immediately discontinued." (R. P. 272.)

All the delays on November 24, 25 and 27 were the result of this dead-head movement of New York Central cars. Since November 27 the train has been on time.

"It is the proposal of the Pennsylvania Railroad to keep a scheme six type coach available in the vicinity of Kinsman Street Engine House at Cleveland, also a diesel locomotive equipped with steam and suitable for passenger service in that territory and when Train 39 departs from Pittsburgh in excess of 30 minutes late to operate the passenger extra from Kinsman Street, Cleveland to Ravenna at which point it will operate from Ravenna on time on Train 38's schedule, making 39's regular stops." (R. P. 273.)

The witness stated that he had participated in discussions with other Pennsylvania Railroad officials in determining whether to revise the proposal so that Train 38 would arrive at Cleveland at 7:45 A. M. instead of the original proposed

time of 8:00 A. M. in order to accommodate commuter passengers.

The witness identified and testified from Respondent's Exhibit No. F which is a public time table showing the schedules of Trains 38 and 39 from New York to Cleveland including all the station stops. This also includes a proposed bus schedule operation between Alliance and Ravenna, Ohio.

The witness also identified and testified from Respondent's Exhibit No. G which is a document showing the total number of revenue passengers handled on Trains 353 and 354 from November 1955 until October 1959, inclusive. The witness also identified and testified from Respondent's Exhibit No. H which is a passenger on-and-off count of Trains 353 and 354 for periods between 1952 and 1958.

The witness identified and testified from Respondent's Exhibit No. I which is an exhibit showing an on-and-off count of revenues and passengers using Train 353 from September 1, 1959 to October 24, 1959, and the passenger extra representing Train 353 from October 26, 1959 to November 11, 1959.

The witness identified and testified from Respondent's Exhibit No. L which is a document reflecting a comparison of passengers handled on 353 and 354 in 1951, 1952, with 1958 and 1959. The study shows a decrease of 36.1% in passenger traffic between these two periods.

*Witness Cornelia Rosmini* appeared and testified on behalf of the complainants. The witness stated that she resided at Hudson and was employed by the B. F. Goodrich Chemical Company at Cleveland, Ohio. The witness stated that she regularly uses the involved trains. The witness is required to be at work by 8:00 A. M. and the witness stated that the proposed through train would get her to work on time if it operated on schedule.

*Witness Blanche Hulack* appeared and testified on behalf of the complainants. The witness stated that she lives at Ravenna, Ohio and worked in Cleveland. The witness stated that she had used the Dan Hanna commuter service from 1948 to 1955. The witness stated that it was necessary that she be at work at 8:00 A. M., and also that she had on occasion used Train 39 and that she could not depend upon this train.

*Witness John Tablack*, a railroad inspector for the Public Utilities Commission of Ohio, appeared and testified on behalf of the complainants. The witness stated that he was assigned by the Commission to ride the train for a period of five days from October 4 to the 9th, inclusive.

The witness stated that he had made a count of revenue passengers using this commuter train during the days of his inspection. The witness identified his report, which was marked as Complainant's Exhibit No. 2. The witness made his report by accompanying the train conductor and obtaining the information from each ticket holder.

*Witness Carol Schuellerman* stated that she resided in Cuyahoga Falls, and was employed in Cleveland. The witness recited an instance where she contacted respondent's agent at Akron, Ohio, and was informed that there were no commuter trains operating between Cuyahoga Falls and Cleveland.

Upon cross-examination the witness stated that an 8:00 o'clock arrival in Cleveland would enable her to get to her place of employment at 8:30 A. M.

*Witness Vivian Mark* stated that she used the involved commuter to go to and from her place of employment in Cleveland. The witness states that she works from 8:30 A. M. to 4:45 P. M. The witness stated that if Train 39 was consistently on time it would suit her transportation needs. The witness stated that she commuted between Hudson and Cleveland.

*Witness Aldean Painter* appeared and testified on behalf of the complainants. The witness stated that she commuted between Hudson and Cleveland and that she was presently engaged in the position of a social worker. The witness also stated that presently she uses the commuter train.

*Witness Harold M. Olson* stated that he resided at Hudson, Ohio, and was employed in Cleveland, Ohio. The witness stated that he had regularly used the involved commuter service for the last four years. The witness started work at 8:30 A. M. The witness stated that he had ridden Train 39 in the past and that his experience with this train had been very unsatisfactory.

*Witness C. F. Baker* appeared and testified on behalf of the complainants. The witness stated that he lived at Alliance, Ohio, and was employed by the Navy Department in Cleveland. He stated that he had lived in Alliance since 1927, and that he

had been commuting into Cleveland since 1953. The witness stated that he felt that "the proposed service between Alliance and Ravenna will be totally inadequate and represents a hardship." (R. P. 151.) The witness stated that the present train leaves Alliance at 6:20 and the proposed bus would leave Alliance at 6 o'clock.

*Witness Theodore B. Bacon* appeared and testified on behalf of the complainants. The witness stated that he commuted on the involved trains to his place of business in Cleveland. The witness resides at Hudson, Ohio.

Upon cross-examination the witness stated that he ordinarily uses Train 39 to get to work in the morning and that he used commuter Train 354 to travel home at night.

*Witness John Burgess* of Stow, Ohio, appeared and testified on behalf of the complainants. The witness stated that presently he is employed in Cleveland and commutes between Stow and Cleveland. The witness works from 8:00 A. M. to 5:00 P. M. daily. The witness stated that if the proposed through train were substituted for the commuter train he was afraid that he would not be able to arrive at his place of employment on time. There is bus service from Stow to Cleveland which leaves Stow at 6:20 in the morning and would arrive in time for his employment. Presently the witness leaves the commuter at 79th St. and takes the Cleveland Rapid Transit on into the Cleveland terminal. The train presently arrives at Woodland Avenue at 7:31 A. M. A schedule arrival at 7:45 would also enable him to get to his office on time.

*Witness Wayne W. Messner* appeared and testified on behalf of the complainants. The witness stated that he resided at Hudson, Ohio, and worked in Cleveland, Ohio. Presently he is a regular commuter on Trains 353 and 354. The witness stated "In my opinion, the substitute which is proposed would be grossly inadequate based on past experience." (R. P. 179.)

The witness felt that the train would be consistently late and also stated that the people who have to be at work by 8:00 A. M. are not receiving any consideration.

The witness stated that if the proposed through train were to operate as scheduled that he would use the service, but that he doubted that if this train would perform regularly.

*Witness James Sherman Thomas* appeared and testified on behalf of the complainants. The witness stated that he resided in Hudson, Ohio, and was employed in Cleveland, Ohio. The witness stated that he was a regular commuter on the trains since 1954. The witness stated that he did not desire to drive his automobile to his place of employment in Cleveland but that if this service were discontinued he would consider finding a different place of employment. The witness stated that he had also tried the Greyhound bus service between Hudson and Cleveland and found it unsatisfactory. He stated that if the proposed service were instituted and the trains operated on time that this would meet his present needs for commuter service.

The witness stated that if the respondent's proposal went into effect the extra commuter rail car would be cleaned at Cleveland prior to its use between Pittsburgh and Cleveland. Both the train and equipment is serviced at Cleveland for the return trip to New York.

In order to assure the promptness of these through trains the respondent has issued a directive to all local regions in writing "that the operation of Train Number 39 must be supervised and policed to insure an on-time performance to properly protect the commuter service between Ravenna, Ohio and Cleveland." (R. P. 287.)

The witness stated that the present consist of Trains 38 and 39 was approximately less than half the consist that existed two or three years ago.

Upon cross-examination the witness stated that Trains 353 and 354 were taken off effective October 25 and that presently an extra train was operating the schedule previously operated by Trains 353 and 354. He further stated that there were other points along the Pennsylvania Railroad system where the commuter passengers were intermingled with interstate train service.

The witness also stated on cross-examination "that if 39 is not going to get out of Pittsburgh by 4:46, we would know it I would say 99% of the time prior to 39's scheduled departure time from Pittsburgh. In other words, if a condition developed whereby 39 would be late we would know it at the time it happened." (R. P. 296.)

The witness felt that if train 39 were going to be late the company would know this fact "a whole lot sooner than 2 hours" and would be able to order out the extra train to meet the commuter's schedule between Ravenna and Cleveland.

The witness stated on cross-examination that the minimum amount of time required to get the stand-by equipment to Ravenna would be an hour and thirty-five minutes. The equipment would move from Kinsman Street in Cleveland to Ravenna.

The respondent could order out crews on emergency notice and the train could move to Ravenna in the time provided.

*Witness Clyde Alexander* appeared and testified on behalf of the respondent. The witness stated that he was engaged in bus transportation and that his firm was located at Alliance, Ohio. The witness stated that he held Certificate No. 1125 issued by the Public Utilities Commission of Ohio and Certificate No. 675 issued by the Interstate Commerce Commission.

The witness stated that he owns four city buses and five over-the-road buses. His firm has five full-time employees and four part-time employees not counting himself.

The witness stated that his firm had entered into a contract with the Pennsylvania Railroad for the transportation of rail passengers between the cities of Alliance and Ravenna. The witness identified and testified from Respondent's Exhibit No. M which is a contract executed between the Respondent and Clyde B. Alexander containing provisions for the transportation of these passengers. The witness stated that presently there is an application on file with this Commission seeking approval of this operation.

The witness stated that the bus used in this operation was a 29 passenger flexible bus with reclining seats and inside luggage rack. The bus contains interior lighting, heated, with forced ventilation.

The witness identified and testified from Exhibits Nos. N and O which are pictures of the bus to be used in this operation.

The witness proposes to operate between Ravenna and Alliance on a 45 minutes schedule. The distance between Ravenna and Alliance is twenty-two and one-half miles via Route 619 out of Alliance and Route 44 and Route 44 to Ravenna. The witness was of the opinion that his bus could make "a re-

liable and consistent connection with Train 39 at Ravenna each morning." (R. P. 317.)

The witness stated that in the event the bus failed to meet its train connection at Ravenna, it had agreed with the Respondent to take the patrons on into Cleveland via bus. The bus operator will collect the rail tickets as well as fares which will be turned back to the railroad company. In the event the Respondent has more than 29 passengers using this service between Alliance and Ravenna, the witness told that his company can furnish a 41 passenger bus for use during this period of time.

*Witness John C. Diem*, Chief Statistician of the Pennsylvania Railroad Company, appeared and testified on behalf of the respondent. The witness stated that he had made an investigation of the revenues earned by Trains 353 and 354 from August 1958 to July 1959. These trains earned $41,794.00 during this period. The witness stated that the operation of these trains has been carried on at a "substantial loss" for the last ten years.

*Witness W. F. Wooster* appeared and testified on behalf of the Respondent. The witness stated that he served in the capacity of special agent for the Pennsylvania Railroad Company and was "working very closely with the accounting department." (R. P. 336.)

The witness stated that he had made a cost study of Trains 353 and 354. The study was made during the twelve month period from August, 1958 to July, 1959 inclusive. The witness identified and testified from Respondent's Exhibit No. P which is a statement showing direct train operating expenses of Trains 353 and 354 during this period. The expenses used in this study are direct expenses and exclude "the so-called cost of maintenance and direct expenses, that is the cost of maintaining the railroad generally. That is, the right of way, buildings, all other pertinencies involving servicing this equipment or maintaining it as well as any station expenses." (R. P. 338.)

The witness also identified and testified from Respondent's Exhibit No. Q which is a document entitled "Net Annual Savings to the P. R. R. through the Discontinuance of Trains Nos. 353 and 354, and the Diversion of Traffic between Ravenna and

Cleveland to Trains Nos. 38 and 39, Alliance-Ravenna traffic to be handled by Contract Bus Service."

*Witness E. D. Howard* appeared and testified on behalf of the Complainants. The witness stated that he was employed as a passenger conductor by the respondent railroad and that he had worked as an extra on 353 and 354. The witness also stated that he worked Trains 38 and 39 "regularly on many occasions."

The witness stated that he was familiar with the location and facilities of the various stations where 353 and 354 have been stopping. The witness stated that he was familiar with the station at Ravenna, Ohio; that there is quite a long ramp from the upper level of the Ravenna station to the lower level. "I would approximate the distance at 400 ft." (R. P. 356.)

The witness was of the opinion that the proposed bus service would not be as convenient as through passenger trains between Alliance and Cleveland. The witness stated that under the Brotherhood's present agreement with the respondent it was necessary to give crewmen a "two hour call." This two hour call requirement prevails unless an emergency arises. The witness was of the opinion that the emergency would necessarily be an Act of God or a wreck. Under the normal two hour call the witness was of the opinion that the extra train could not be dispatched to Ravenna to meet the commuter's schedule.

DISCUSSION:

This case arises out of numerous complaints of individuals directed to this Commission, the expressed complaint by the City of Cleveland, Ohio, and the complaint by representatives of the various railway brotherhoods.

The respondent, Pennsylvania Railroad Company, is proposing to substitute interstate, through passenger trains for the service heretofore rendered by commuter trains—the so-called "Dan Hanna" commuters operating between Cleveland and Alliance. The respondent proposes that the interstate train will make the same commuter stops previously made by the "Dan Hanna" between Ravenna, Ohio and Cleveland, Ohio. The schedules of these trains will be hereinafter set forth for comparison.

These complaints are considered to properly come under

the provisions of Section 4909.24, Revised Code, wherein it is stated that:

"Upon complaint of a person, firm, corporation, or association, of a mercantile, agricultural, or manufacturing society, or of a body politic or municipal organization, that . . . any regulation or practice, affecting the transportation of persons or property, or any service in connection therewith, are in any respect unreasonable or unjustly discriminatory, or that any service is inadequate, the public utilities commission may notify the railroad complained of that complaint has been made and ten days after such notice proceed to investigate such charges . . . Before making such investigation, the commission shall give the railroad and the complainants ten days' notice of the time and place such matters will be considered and determined, and such parties are entitled to be heard and to have process to enforce the attendance of witnesses."

In all such complaint cases filed with this Commission, the affirmative burden of establishing the existence of inadequate service is upon the complainant. (Complaint against N. Y. C. Ry., Case No. 27,338, decided October 6, 1958.) The Ohio Supreme Court has held that while the hearing held by this Commission is informal in nature, nevertheless, evidence must be received "under the established and recognized rules for the production of evidence." *The Chesapeake & Ohio Ry.* v. *P. U. C. O.*, 163 Ohio St., 252.

The complainants herein are in the rather unusual position of complaining not against the existing passenger train service offered by the respondent but rather against the prospective passenger service to be offered following the discontinuance of the "Dan Hanna." The complainant witnesses essentially feel that while the respondent states that it proposes to operate Trains Nos. 38 and 39 in such a manner to meet their needs, that from past experience with these trains, they do not believe that the respondent will live up to the letter of the proposal. This conjecture on the part of the complainant commuters is speculative. The respondent submitted convincing testimony of its intentions to see that this through train would meet the commuter schedule hereinafter set forth.

*Train No. 38*                                          *Train No. 39*

| 5:45 | P. M. | Lv. | Cleveland Station | Ar. | 7:45 | A. M. |
|------|-------|-----|-------------------|-----|------|-------|
| 5:48 |       |     | Woodland Avenue   |     | 7:39 |       |
| 5:54 |       |     | Harvard Avenue    |     | 7:34 |       |
| 6:04 |       |     | Bedford           |     | 7:24 |       |
| 6:13 |       |     | Macedonia         |     | 7:15 |       |
| 6:25 |       |     | Hudson            |     | 7:06 |       |
| 6:42 |       | Ar. | Ravenna           | Lv. | 6:48 |       |

The Schedule previously followed by Trains 353 and 354 is as follows:

*Train No. 354*                                          *Train No. 353*

| 5:30 | P. M. | Lv. | Cleveland Station | Ar. | 7:40 | A. M. |
|------|-------|-----|-------------------|-----|------|-------|
| 5:33 |       |     | Woodland Avenue   |     | 7:31 |       |
| 5:39 |       |     | Harvard Avenue    |     | 7:26 |       |
| 5:49 |       |     | Bedford           |     | 7:17 |       |
| 5:58 |       |     | Macedonia         |     | 7:09 |       |
| 6:09 |       |     | Hudson            |     | 7:01 |       |
| 6:25 |       |     | Ravenna           |     | 6:42 |       |
| 6:47 |       | Ar. | Alliance          | Lv. | 6:20 |       |

Under the proposed bus operation between Alliance and Ravenna, the bus will leave the railroad station at Alliance at 6:00 A. M., and will arrive at Ravenna at 6:45 A. M. In the evening the bus will meet Train No. 38 at Ravenna at 6:45 P. M., and will discharge the bus passengers at the Alliance station at 7:30 P. M.

The respondent herein has submitted copious exhibits showing the decline of passenger patronage (amounting to 36.1% since 1951) on the involved commuters, and the increasing deficit resulting from the continuance of this operation.

In Respondent's Exhibit P the loss experienced in the operations of Trains Nos. 353 and 354 from August, 1958 to July, 1959, inclusive, is set forth. A summary of this loss follows:

|  | 353 | 354 | Total |
|---|---|---|---|
| Total Direct Train Expense | $36,834.18 | $36,834.18 | $73,668.36 |
| Total Revenue Passenger | 18,107.00 | 23,687.00 | 41,794.00 |
| Net Loss | 18,727.18 | 13,147.18 | 31,874.36 |

Thus, it is seen that in order to recoup the losses hereinabove set forth the respondent is required to look to other sources for reimbursement—in fact, the present commuter operations are being subsidized by the respondent's other patrons. The complainants emphasize the lack of advertising on the part of the respondent relative to the availability of this commuter service, although, in fact, this service has been in existence for over twenty years. The public in twenty years certainly should be aware of the existence of these commuters —the evidence herein indicating that at one time this service was patronized to a larger extent. A reasonable conclusion that may be made from an examination of the evidence submitted herein, is that the public has gone to other means of transportation and no longer considers the passenger services afforded by this respondent between Alliance and Cleveland as convenient and necessary.

The respondent is not requesting that those patrons still desiring to avail themselves of passenger service between Alliance and Cleveland be turned away. It is proposing to consolidate its commuter service with interstate trains and in this way the needs of the commuters still desiring passenger service will be satisfied. Such proposal, in my opinion, is reasonable and should be permitted especially when considered in light of the estimated net savings of $53,339.60 to the respondent.

The arrival time in Cleveland at 7:45 A. M. will meet the needs of the majority of those complainants who continue to use the respondent's passenger service. There were a few of the complainant witnesses who contend that the arrival time of 7:45 A. M. will be too late to enable them to arrive at their place of employment on time. The respondent feels that 7:45 A. M. arrival time will benefit the majority of its commuter passengers.

This Commission in many of its decisions has made especial

note of the problems facing the passenger transportation industry which includes both train and motor bus. Since the termination of World War II there has been a steady decline in the use made by the public of motor bus and passenger train service. In order to preserve this form of transportation the Commission has made every effort to aid these public carriers in affecting economies in their operations. It is hoped that in such a manner the essential operations of these public carriers may be retained for service to the traveling public. In my opinion the proposal of the respondent to eliminate the expenses incurred in the operations of Trains Nos. 353 and 354 is in conformity with the transportation policy of this Commission.

If, in fact, the respondent does not live up to its expressed promise of meeting the commuter time-table either by use of Trains Nos. 38 and 39 or the standby train provided for in the event of a delay in service afforded by the regular train, this Commission may upon its own motion or upon request by complainants investigate into the service afforded the commuters. I feel that the respondent is acting in good faith when its representatives state that they intend and will operate according to the schedule hereinabove set forth. Certainly, if the respondent is not acting in good faith there is no prohibition against either reopening these proceedings or instituting *de novo* proceedings against it.

In conclusion, one must make note of the fact that in any complaint proceeding such as herein summarized, it is impossible to satisfy every faction represented in the proceeding. We are of the earnest conviction that by allowing the respondent to put its proposal into operation, we are providing the means of satisfying the majority of the commuters who avail themselves of this passenger service.

FINDINGS:

From an examination of the testimony and exhibits submitted in this case, it is your attorney examiner's finding that:

(1) The instant matter is properly before this Commission pursuant to the provisions of Section 4909.24, Revised Code;

(2) The Commission has jurisdiction to hear and deter-

152

mine the complaint filed with this Commission by numerous individuals, the City of Cleveland, Ohio and the various railway brotherhoods;

(3) The affirmative burden of establishing that the passenger train service between Cleveland, Ohio and Alliance, Ohio is inadequate or will be inadequate if the proposed discontinuance of Trains Nos. 353 and 354 is accomplished is upon the complaining party or parties;

(4) The complainants have failed to establish affirmatively that the passenger service presently afforded or proposed by the respondent is or will be inadequate;

(5) The respondent states that it will continue furnishing commuter service at the same stops previously made by Trains Nos. 353 and 354 by either using either Train Nos. 38 or 39 or by the use of a "stand-by" train in the event of the stated late arrival of Train No. 39;

(6) The respondent will furnish passenger service via motor bus between Alliance, Ohio and Ravenna, Ohio in conjunction with the operations of Trains Nos. 38 and 39;

(7) The proposal of the respondent is in conformity with the transportation policy of the State of Ohio; and

(8) The dismissal of this complaint is without prejudice to the filing of subsequent complaints pertaining to the adequacy of the commuter service afforded by the respondent.

RECOMMENDATION:

It is the recommendation of your attorney examiner that the complaints filed herein be dismissed.

Respectfully submitted,
Lewis S. Witherspoon
Attorney Examiner

LSW:em
Dated—Dec. 10, 1959
CC: Appearances.

PENNSYLVANIA RAILROAD, Investigation, In re.

No. 28822.   Decided December 31, 1959.

*ORDER*

This day after full hearing, due notice of the time and

place of which was given to all parties in interest, this matter came on for consideration upon the Investigation of the adequacy of the passenger train service remaining between Alliance and Cleveland after the removal of Pennsylvania Railroad Trains Nos. 353 and 354; the Report and Recommendation of Attorney Examiner Lewis S. Witherspoon dated December 10, 1959; the oral argument made before this Commission on November 9, 1959; and the testimony and exhibits offered and introduced into evidence upon said hearing, and

In compliance with Section 4903.09, Revised Code, the Commission hereby renders the following opinion:

*Resume of the Record:*

The Commission hereby adopts as its own, as if fully rewritten herein, the paragraphs following the caption "Summary of the Evidence" as contained in the Report of its Attorney Examiner dated December 10, 1959.

*Findings of Fact and Law:*

The Commission hereby adopts as its own, as if fully rewritten herein, the paragraphs following the caption "Discussion" of the evidence as contained in the Report of its Attorney Examiner dated December 10, 1959, and hereby reiterates the following:

"In all such complaint cases filed with this Commission, the affirmative burden of establishing the existence of inadequate service is upon the complainant. (Complaint against N. Y. C. Ry., Case No. 27,338, decided October 6, 1958.) The Ohio Supreme Court has held that while the hearing held by this Commission is informal in nature, nevertheless, evidence must be received 'under the established and recognized rules for the production of evidence.' *The Chesapeake & Ohio Ry.* v. *P. U. C. O.*, 163 Ohio St., 252.

"The complainants herein are in the rather unusual position of complaining not against the existing passenger train service offered by the respondent but rather against the prospective passenger service to be offered following the discontinuance of the 'Dan Hanna.' The complainant witnesses essentially feel that while the respondent states that it proposed to operate Trains Nos. 38 and 39 in such a manner to meet their needs, that from past experience with these trains, they do not

believe that the respondent will live up to the letter of the proposal. This. conjcture on the part of the complainant commuters is speculative. The respondent submitted convincing testimony of its intentions to see that this through train would meet the commuter schedule hereinafter set forth.

| *Train No. 38* | | | | *Train No. 39* | | |
|---|---|---|---|---|---|---|
| 5:45 | P. M. Lv. | Cleveland Station | Ar. | 7:45 | A. M. |
| 5:48 | | Woodland Avenue | | 7:39 | |
| 5:54 | | Harvard Avenue | | 7:34 | |
| 6:04 | | Bedford | | 7:24 | |
| 6:13 | | Macedonia | | 7:15 | |
| 6:25 | | Hudson | | 7:06 | |
| 6:42 | Ar. | Ravenna | Lv. | 6:48 | . |

The schedule previously followed by Trains 353 and 354 is as follows:

| *Train No. 354* | | | | *Train No. 353* | | |
|---|---|---|---|---|---|---|
| 5:30 | P. M. Lv. | Cleveland Station | Ar. | 7:40 | A. M. |
| 5:33 | | Woodland Avenue | | 7:31 | |
| 5:39 | | Harvard Avenue | | 7:26 | |
| 5:49 | | Bedford | | 7:17 | |
| 5:58 | | Macedonia | | 7:09 | |
| 6:09 | | Hudson | | 7:01 | |
| 6:25 | | Ravenna | | 6:42 | |
| 6:47 | ·Ar. | Alliance | Lv. | 6:20 | |

"Under the proposed bus operation between Alliance and Ravenna, the bus will leave the railroad station at Alliance at 6:00 A. M., and will arrive at Ravenna at 6:45 A. M. In the evening the bus will meet Train No. 38 at Ravenna at 6:45 P. M., and will discharge the bus passengers at the Alliance station at 7:30 P. M.

"The respondent herein has submitted copious exhibits showing the decline of passenger patronage (amounting to 36.1% since 1951) on the involved commuters, and the increasing deficit resulting from the continuance of this operation.

"In respondent's Exhibit P the loss experienced in the operations of Trains Nos. 353 and 354 from August, 1958 to July, 1959, inclusive, is set forth. A summary of this loss follows:

|  | 353 | 354 | Total |
|---|---|---|---|
| Total Direct Train Expense | $36,834.18 | $36,834.18 | $73,668.36 |
| Total Revenue Passenger | 18,107.00 | 23,687.00 | 41,794.00 |
| Net loss | 18,727.19 | 13,147.18 | 31,874.36 |

"Thus, it is seen that in order to recoup the losses hereinabove set forth the respondent is required to look to other sources for reimbursement—in fact, the present commuter operations are being subsidized by the respondent's other patrons. The complainants emphasize the lack of advertising on the part of the respondent relative to the availability of this commuter service, although, in fact, this service has been in existence for over twenty years. The public in twenty years certainly should be aware of the existence of these commuters—the evidence herein indicating that at one time this service was patronized to a larger extent.

"A reasonable conclusion that may be made from an examination of the evidence submitted herein, is that the public has gone to other means of transportation and no longer considers the passenger services afforded by this respondent between Alliance and Cleveland as convenient and necessary.

"The respondent is not requesting that those patrons still desiring to avail themselves of passenger service between Alliance and Cleveland be turned away. It is proposing to consolidate its commuter service with interstate trains and in this way the needs of the commuters still desiring passenger service will be satisfied. Such proposal, in my opinion, is reasonable and should be permitted especially when considered in light of the estimated net savings of $53,339.60 to the respondent.

"The arrival time in Cleveland at 7:45 A. M. will meet the needs of the majority of those complainants who continue to use the respondent's passenger service. There were a few of the complainant witnesses who contend that the arrival time of 7:45 A. M. will be too late to enable them to arrive at their

place of employment on time. The respondent feels that 7:45 A. M. arrival time will benefit the majority of its commuter passengers.

"This Commission in many of its decisions has made especial note of the problems facing the passenger transportation industry which includes both train and motor bus. Since the termination of World War II there has been a steady decline in the use made by the public of motor bus and passenger train service. In order to preserve this form of transportation the Commission has made every effort to aid these public carriers in affecting economies in their operations. It is hoped that in such a manner the essential operations of these public carriers may be retained for service to the traveling public. In my opinion the proposal of the respondent to eliminate the expenses incurred in the operations of Trains Nos. 353 and 354 is in conformity with the transportation policy of this Commission.

"If, in fact, the respondent does not live up to its expressed promise of meeting the commuter time-table either by use of Trains Nos. 38 and 39 of the standby train provided for in the event of a delay in service afforded by the regular train, this Commission may upon its own motion or upon request by complainants investigate into the service afforded the commuters. I feel that the respondent is acting in good faith when its representatives state that they intend and will operate according to the schedule hereinabove set forth. Certainly, if the respondent is not acting in good faith there is no prohibition against either reopening these proceedings or instituting *de novo* proceedings against it."

This Commission on November 9, 1959, received oral argument from counsel for the complainants and respondent relative to whether the proposal to substitute motor bus service between Alliance and Ravenna constitutes an abandonment and that, therefore, application should have been made under the so-called "Miller Act," i. e., Sections 4905.20 and 4905.21, Revised Code.

From the evidence submitted herein it is apparent that the proposed substitute bus service is closely integrated with the commuter train schedules between Ravenna and Cleveland.

The testimony submitted in the record of this case indicates that this proposed bus service is tailored to meet the transportation needs of commuters traveling between Alliance and the points along the proposed bus route to Cleveland, Ohio and return. Under the facts presented herein, this proposal cannot be said to constitute an abandonment. (*Western Union* v. *PUCO*, 154 Ohio St., 511.) The service proposed is comparable to that presently available to the public. It is our determination from an examination of all of the testimony presented herein that the instant proposal to substitute bus service between Alliance and Ravenna and return does not constitute an abandonment.

*Ultimate Findings*:

The Commission hereby adopts as its own, as if fully rewritten herein, the paragraphs following the caption "Findings" as contained in the Report of its Attorney Examiner dated December 10, 1959, and hereby reiterates the following findings:

"(3) The affirmative burden of establishing that the passenger train service between Cleveland, Ohio and Alliance, Ohio, is inadequate or will be inadequate if the proposed discontinuance of Trains Nos. 353 and 354 is accomplished is upon the complaining party or parties;

"(4) The complainants have failed to establish affirmatively that the passenger service presently afforded or proposed by the respondent is or will be inadequate;

"(5) The respondent states that it will continue furnishing commuter service at the same stops previously made by Trains Nos. 353 and 354 by either using either Trains Nos. 38 or 39 or by the use of a 'stand-by' train in the event of the stated late arrival of Train No. 39;

"(6) The respondent will furnish passenger service via motor bus between Alliance, Ohio and Ravenna, Ohio, in conjunction with the operations of Trains Nos. 38 and 39;

"(7) The proposal of the respondent is in conformity with the transportation policy of the State of Ohio; and

"(8) The dismissal of this complaint is without prejudice to the filing of subsequent complaints pertaining to the adequacy of the commuter service afforded by the respondent."

The Commission further finds from an examination of the evidence submitted in this case, that the proposed substitute bus service between Alliance and Ravenna and return does not constitute an abandonment of service such as contemplated in Sections 4905.20 and 4905.21, Revised Code. The proposed bus service is comparable to the passenger train service heretofore furnished to the public.

*ORDER*:

It is, therefore,

ORDERED, That the complaints filed with this Commission relative to the adequacy of passenger train service remaining between Alliance and Cleveland after the removal of Pennsylvania Railroad Trains Nos. 353 and 354 be dismissed without prejudice.

THE PUBLIC UTILITIES COMMISSION OF OHIO

Entered in Commission's Journal: Edward J. Kenealy
December 31, 1959                            Chairman
A true copy:                        Robert W. Reider
R. Martin Galvin                   Everett H. Krueger, Jr.,
R. Martin Galvin, **Secretary**          Commissioners